UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KIRK BENNETT,

    Plaintiff,

v.                                          Case No: 6:17-cv-2011-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Kirk Bennett, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff protectively filed an application for a period of disability and DIB on March 19, 2014, alleging a disability onset date of December 15, 2012. (Tr. 170). Plaintiff's claims were denied at the initial and reconsideration levels. Plaintiff requested a hearing, and, on November 13, 2015, an administrative hearing was held before Administrative Law Judge Bruce Landrum ("the ALJ"). (Tr. 36-74). On December 20, 2016, the ALJ entered a decision finding that Plaintiff was not under a disability from December 15, 2012, through the date of the decision. (Tr. 17-31). Plaintiff filed a request for review which the Appeals Council denied on September 18, 2017. (Tr. 1-6). Plaintiff initiated this action by filing a Complaint (Doc. 1) on November 21, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2012, the alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: fractures of the lower extremity, dysfunction of the major joints and spine disorders. (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> Light work as defined in 20 CFR 404.1567(b), except he can only stand and/or walk for four hours in an eight-hour workday. He can sit for six hours in an eight-hour workday. The claimant can frequently climb ramps, stairs, ladders, ropes and scaffolds. The claimant can frequently balance, stoop, kneel, crouch and crawl.

(Tr. 21). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a water softener servicer and installer. (Tr. 29).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (Tr. 30). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as ticket taker, information clerk, and toll collector. (Tr. 30). The ALJ concluded that Plaintiff was not under a disability from December 15, 2012, through the date of the decision, December 20, 2016. (Tr. 31).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in assessing Plaintiff's RFC; (2) whether the ALJ erred by posing an incomplete hypothetical question to the vocational expert; and (3) whether the ALJ properly erred in evaluating Plaintiff's credibility.

The Court begins with Plaintiff's first raised issue. Plaintiff argues that the ALJ erred in his RFC formulation by failing to fully consider the extent of Plaintiff's exertional limitations due to extensive trauma to the left lower extremity with continued pain and post-operative swelling after limb salvage procedures. (Doc. 28 p. 11). Plaintiff contends that the ALJ failed to include any limitations in the RFC that accounts for Plaintiff's left lower extremity swelling and throbbing pain with the need to elevate, despite the record clearly supporting such limitations. (Doc. 28 p.

12). Specifically, Plaintiff argues that the ALJ failed to discuss the weight accorded to the opinion of treating physician Dr. Klein who directed Plaintiff was to keep his lower extremity elevated as much as possible. (Doc. 28 p. 13). Plaintiff argues that if the ALJ had properly credited Dr. Klein's opinion, the RFC would necessarily have been further reduced. (Doc. 28 p. 14).

In response, Defendant argues that the ALJ properly evaluated the medical record and that substantial evidence supports the ALJ's RFC finding. (Doc. 28 p. 14-16). Defendant contends that reliance on Dr. Klein's recommendation that Plaintiff elevate his foot is misplaced, as more recent evidence discussed by the ALJ showed improvement in Plaintiff's condition and recommendations besides full-time leg elevation. (Doc. 28 p. 17).

A review of the medical evidence is in order. The record shows that Plaintiff was admitted to Orlando Regional Medical Center (ORMC) on December 15, 2012 after an all-terrain vehicle rolled onto his left lower extremity. He suffered a "limb threatening" acute open tibia and fibular fracture and "degloving" injury to his left leg. (Tr. 255-57, 265-67). He underwent multiple surgeries at ORMC, including internal fixation and left irrigation and debridement of massive open wound, left lower extremity, by orthopedic surgeon Joshua Langford, M.D. (Tr. 274-77).

On December 21, 2012, Plaintiff underwent reconstructive plastic surgery with Richard Klein, M.D. (Tr. 278-84, 500). After he was discharged from ORMC in January 2013, Plaintiff commenced regular follow-up visits with surgeons Drs. Langford and Klein. He remained on IV antibiotics, was non-weight bearing and in a wheelchair, and received daily home health nurse visits. (Tr. 562, 500).

Dr. Klein indicated at a visit in February 2013 that Plaintiff was healing with 2+ to 3+ edema of the left lower extremity and 90 percent take of the graft. He was directed to elevate his left lower extremity as much as possible due to the swelling. (Tr. 513). At 10 weeks out in March

2013, Dr. Langford noted little healing of the fibular fracture with inability to dorsiflex and significant limitations of his foot and ankle range of motion; he recommended Plaintiff begin weight bearing and physical therapy to work on range of motion. (Tr. 557-58). On a April 2, 2013 visit to Dr. Klein's office, ARNP Smith noted Plaintiff complained of pain and had a less than 2 cm open wound and 2+ edema of the lower extremity. (Tr. 480). When seen by orthopedic surgeon Dr. Langford two weeks later, Plaintiff continued with residual swelling, intact hardware and minimal signs of healing of the left tibia. (Tr. 554).

When next seen by Dr. Klein's office on May 14, 2013, Plaintiff's main concern was left lower extremity swelling and the contour of his flap, which appeared to be contracted due to scar tissue. He continued to have a small open wound to the pretibial area. A left lower leg compression stocking was prescribed with instructions to keep the foot elevated as much as possible and to continue in physical therapy. (Tr. 516). The following month, Dr. Langford noted Plaintiff was making good progress with his limb salvage with mild drainage at a couple of corner sites of his skin grafting and limited range of motion of his ankle. Dr. Langford advised Plaintiff he was not to be on job sites but was able to do office work. (Tr. 547).

In September 2013, Plaintiff returned to both Drs. Langford and Klein. Dr. Langford indicated Plaintiff had a completely healed fibular fracture with intramedullary rod in place and no restrictions from an orthopedic standpoint. Plastic surgeon Dr. Klein found on clinical examination significant deformity with bulky left lower leg posterior calf and lower leg flap with graft and edema to the left lower leg and ankle. As a consequence of same ("large 20 cm long x 15.5 cm wide area of scar defect"), Plaintiff was to be scheduled for a staged process of several procedures for debulking and revision of flap and thigh scar. (Tr. 518, 542-45). Thereafter, on October 17, 2013, Plaintiff underwent left lower extremity flap debulking with lipectomy and

excision of distal flap scar and left ALT donor site skin graft. He continued to have edema to the left lower leg at follow-up. (Tr. 423, 447, 519). Orthopedic surgeon Dr. Langford saw Plaintiff on 01/08/2014 for radiating left lower leg pain leaving him with [in]ability to walk at times with exam consistent with sciatica. The medications Flexeril and a Medrol dosepak were prescribed, and Plaintiff was referred to spine surgeon Dr. [Me]inhar[d]t. (Tr. 540).

At his follow-up visit with Dr. Klein on January 21, 2014, Plaintiff had continued symptoms of swelling, neuropathy, tingling and impaired range of motion such that they would hold off any future revisions until these issues were resolved. (Tr. 523). While Plaintiff was noted to be healing well at his April 9, 2014 visit, he had a staple noted in his lower extremity and significant pain and swelling. (Tr. 525). He was again instructed to elevate his left lower extremity as much as possible to reduce swelling. (Tr. 525). Dr. Langford noted an appropriately tight Achilles "scarred in" on June 25, 2014, with 90 degrees of dorsiflexion. (Tr. 533).

Plaintiff underwent extensive chiropractic treatment with Dr. James Hardwick from August 2013 to February 2014 and with Dr. Jack Lynady from January 2015 through July 2016, who felt that his lower back pain was due to his altered gait. (Tr. 357-94, 625-649, 655-91). Dr. Lynady completed two attending physician's statements wherein he indicated Plaintiff had left lumbar and hip pain, left leg pain and swelling 5 to 6 times per week. He had decreased range of motion, strength and flexibility and was limited to moderate/mild walking, standing and lifting with no more than 1 hour standing at a time and no lifting overhead more than 20 pounds. (Tr. 693-700). Likewise, podiatrist Dr. Mason noted Plaintiff's primary concern was inability to dorsiflex which alters his gait. He was using a cane and had continued equinus[4] subsequent to traumatically induced injury and peroneal apparatus type pain. (Tr. 652).

As a consequence of the aforementioned radiating left lower extremity pain in an S1 distribution and limp with ambulation, Plaintiff commenced treatment with Philip Meinhardt, M.D. on June 18, 2014. Dr. Meinhardt noted swelling and significant stiffness in the left ankle, positive straight leg raise testing, significant tightness in the left hamstring and severe L5-S1 disc degeneration on diagnostic studies. (Tr. 622-23). He obtained an MRI which demonstrated a 5 mm L5-S1 left paracentral disc protrusion that contracts, compresses and posteriorly and laterally displaces the traversing left S1 nerve root. (Tr. 579-80, 593-94). Plaintiff continued to be seen and treated in 2015 by Drs. Meinhardt and Papa at Jewett Orthopedic Clinic for his left radicular complaints and left lower extremity pain, calf cramps and swelling. (Tr. 600-23). Plaintiff had chronic tightness of his left calf and ankle, mid and forefoot pain as well as plantar central forefoot pain, right knee pain with weightbearing and when kneeling and right hind foot and ankle pain. Dr. Papa and Jared Reiss, PA-C noted clinically that Plaintiff had paresthesia over his left calf, ankle and foot in the peroneal nerve distribution, obvious weakness in dorsiflexion, an equinus contracture of his left ankle with motion restriction and ongoing relative dysfunction of the left lower leg. (Tr. 608-10). When Plaintiff returned in August 2015, he was still having some swelling in his left lower extremity particularly up and above quite a bit on his legs. (Tr. 618). He experienced bilateral foot and ankle pain, paresthesia in his left calf and ankle, right anterior knee pain, equinus contracture, and ongoing relative dysfunction of the left lower leg for which Dr. Papa and PA-C Reiss prescribed foot injections and a medium grade vascular compression stocking. (Tr. 618-19).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever

a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Klein. While the ALJ summarized some of the medical evidence from Dr. Klein, he failed to discuss the weight accorded to Dr. Klein's opinion that Plaintiff was to keep his lower extremity elevated as much as possible. This omission constitutes reversible error.

The Court rejects Defendant's argument that the ALJ's failure to weigh Dr. Klein's opinion is obviated by other evidence in the record and subsequent records showing Plaintiff progressed after his surgeries. As a treating physician, Dr. Klein's opinion was entitled to considerable weight

unless good cause was shown to the contrary. The ALJ was required to directly address Dr. Klein's opinion and explain his reasoning in weighing the opinion. The fact that the ALJ discussed other evidence does not cure this error.

Upon remand, the ALJ is directed to weigh the opinions of Dr. Klein, explain his reasoning for his conclusions, and conduct any further proceedings as necessary. As the ALJ's evaluation of Dr. Klein's opinions may alter his ultimate findings, the Court defers from addressing Plaintiff's other raised issues at this time.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 15, 2019.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties